UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | | |
|---|---|---|
| DANIEL YATES, individually and on behalf of similarly situated persons, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:21-cv-1125-YY |
| v. | ) ) ) | |
| JAK PIZZA, INC., a domestic corporation; and TIMOTHY R. HAMMER, an individual, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S CONSENT MOTION FOR (1) CERTIFICATION OF A COLLECTIVE AND CLASS ACTION FOR SETTLEMENT PURPOSES, (2) APPROVAL OF A COLLECTIVE ACTION SETTLEMENT, (3) PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT, (4) APPROVAL OF NOTICE TO PUTATIVE CLAIMANTS, AND (5) SCHEDULING A HEARING FOR FINAL APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT AGREEMENT, <u>AND MEMORANDUM IN SUPPORT</u>**

Plaintiff Daniel Yates, on behalf of himself and all others similarly situated, through his attorneys, with the consent of Defendants JAK Pizza, Inc. and Timothy R. Hammer, through their attorneys, moves the Court for (1) certification of a Fair Labor Standards Act ("FLSA") collective action and an Oregon class action for settlement purposes; (2) approval of the parties' collective action settlement, (3) preliminary approval of the parties' class action settlement; (4) approval of notice to the putative claimants; and (5) scheduling a hearing for final approval of the parties' class action settlement agreement.

A copy of the parties' executed Settlement Agreement is attached as "Exhibit 1." The proposed Notice of Collective Action Settlement is attached as "Exhibit 2." The declaration of Plaintiff's attorneys, Mark Potashnick and Matthew Haynie, in support of this motion and brief are attached as "Exhibit 3" and "Exhibit 4, respectively. Plaintiff incorporates the following Memorandum in

Support. The parties have reached a settlement on behalf of approximately 760 class members. The settlement meets the standards for approval of an FLSA settlement and for granting preliminary approval of a class action settlement.

### Facts and Procedural History

Defendants operate a chain of six Domino's Pizza franchise stores in Oregon.

Plaintiff Daniel Yates worked for Defendants as a delivery driver from about August 2019 to March 2020 at Defendants' Domino's Pizza store located at 325 Southeast First Avenue, Canby, Oregon, 97013.

On July 30, 2021, Plaintiff filed suit against Defendants on behalf of himself and similarly situated delivery drivers currently and formerly employed by Defendants. Plaintiff alleged that Defendants under-reimbursed their delivery drivers' vehicle costs incurred on the job, thereby reducing their net wages below the federal and state minimum wage rates (nominal wages – unreimbursed vehicle costs = subminimum net wages).  Further, Plaintiff alleged that Defendants applied substantially the same reimbursement formula and rate to all of their delivery drivers during the recovery period.

Shortly after entering his appearance, Plaintiff's current counsel informed Defendants of Plaintiff's intention to file an amended complaint to add allegations that Defendants violated Oregon's minimum wage statutes, O.R.S. Ch. 653; a six-year statute of limitations under O.R.S. § 12.080 applies; and a claim seeking statutory penalties under O.R.S. §§ 652.150 and 653.055(1)(b).

Such discussions led counsel to agree to disclosure of data needed to evaluate liability and calculate damages, followed by mediation or another form of negotiations.

Defendants produced that data, which Plaintiff's counsel synthesized into weekly spreadsheet damage calculations, which Plaintiff disclosed to Defendants. Both sides thoroughly analyzed those calculations, then scheduled mediation.

On July 20, 2022, the parties mediated for a full day with Kay L. Wolf, a highly experienced and well-respected wage and hour and class action mediator. Through that mediation, the parties reached an accord resulting in the settlement agreement filed herewith. Named Plaintiff Yates actively participated in each round of the mediation. The attorneys who negotiated on behalf of the parties are experienced litigators, and they vigorously represented their clients' respective interests. Ex. 3, Declaration of Mark Potashnick, at ¶¶ 1-7 (hereinafter "Potashnick Decl.").

The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously-disputed legal and factual issues. It considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals. Potashnick Decl. ¶ 16.

## Key Settlement Terms

The parties executed a Settlement Agreement and Release of Claims. Exhibit 1. In sum, they agreed to settle all putative class members' wage and hour claims by Defendants paying $375,000.00 inclusive of payments to class members, litigation costs, administrative costs, a service award, and attorney's fees. Separately and additionally, Defendants' will pay the mediator's fee. The remaining settlement funds will be distributed to class members who submit claims based on the following equitable formula:

> (Total workweeks during the recovery period by each class member / all Class Members' workweeks during the recovery period) x net settlement fund.

The net settlement fund is equal to the gross settlement fund less litigation costs, administrative costs, service award, attorney's fees and funds paid to achieve minimum distribution amounts.  All class members will receive at least $25.00.  *See* Settlement Agreement, ¶ 2.1(B).

> The release binding Class Members who do not opt out is:
> Each Class member releases all claims accrued from January 1, 2016 through December 31, 2021, that were or could have been made against the Released Parties in this Litigation based on the allegations of the Complaint, or similar wage-based claims, based on the same facts alleged in the Complaint, including all claims under the Fair Labor Standards Act, 29 U.S.C.§ 201, et. seq., and state wage and hour laws, whether known or unknown, including but not limited to any and all claims arising out of any federal or state wage or minimum wage or overtime pay laws; any and all claims for breach of contract; any and all claims for unpaid or underpaid employee expense reimbursement; any and all claims for unjust enrichment; and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Released Parties.

*See* Settlement Agreement, ¶ 3.1(B).

Based on his service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, named Plaintiff Yates seeks a modest service award of $7,500.00. *Id.*, ¶ 2.1(A)(2).

Subject to this Court's approval, Plaintiff's Counsel will receive fees and litigation costs equal to one-third of the gross settlement amount.  Defendants do not oppose or object to this request for attorneys' fees and costs. *See id.*, ¶ 2.1(A)(2).

The parties will jointly select a settlement administrator, whose fees will be paid from the maximum settlement amount.  *See id.,* ¶ 2.1(A)(5).

A notice of collective action settlement (the "Notice") will be mailed to all putative class members as soon as practicable after the Court's preliminary approval of this settlement.  Exhibit 2. The Notice explains in clear terms (1) the nature of the settlement, (2) the factors used to determine the amount each class and collective action class member has been allocated under the

settlement, and (3) each delivery driver's right to object to the settlement or exclude themself from the settlement.

<div align="center">**Argument**</div>

I.      **Class / Collective Action Certification**

A.  **Certification of the Class Action**

Where "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.,* 327 F.3d 938. 952 (9th Cir. 2003).

To obtain class certification, the proponent of class certification must show the elements required under Fed. R. Civ. P. 23.  Subsection (a) of Rule 23(a) requires:

> "(1) the members of the class are so numerous that separate joinder of each member is impracticable ["*numerosity*'];
>
> (2) there are questions of law or fact common to the class ["*commonality*"];
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["*typicality*"]; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class ["*adequacy of representation*"].

In addition to Rule 23(a), the party seeking class certification must satisfy one of the alternative requirements of Rule 23(b).  In this case, the pertinent requirement is found in subsection (b)(3), which provides that "…the questions of law or fact common to class members predominate over any questions affecting only individual members ["*predominance*"], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ["*superiority*"]." *Id.*

**Rule 23(a)(1): Numerosity**

Plaintiff's claims satisfy the "numerosity" requirement of Rule 23(a)(1), as the class consists

of approximately 760 current and former employees.  Thus, the class is so numerous that separate joinder of each member is impracticable.  *See, e.g., Maney v. Oregon*, 2022 U.S. Dist. LEXIS 61930, at *14-15 (D. Or. Apr. 1, 2022) ("In the District of Oregon, as in many other districts, there is a 'rough rule of thumb' that [forty] class members is sufficient to meet the numerosity requirement.") (quoting *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, 2020 U.S. Dist. LEXIS 72904, at *11-12 (D. Or. Apr. 24, 2020)).

### Rule 23(a)(2): Commonality

The "commonality" inquiry of Rule 23(a)(2) requires at least one question of law or fact common to each class member that is capable of class-wide resolution.  *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2556 (2011)) ("even a single common question will do."); *Maney*, 2022 U.S. Dist. LEXIS 61930, at *24 ("commonality requires only a single significant question of law or fact in common.") (internal quotes omitted).  Commonality is satisfied where questions of law refer to standardized conduct by the defendants.  *Dillon v. Clackamas Cty.,* 2018 U.S. Dist. LEXIS 124561, *46 (D. Or. May 2, 2018) (citing cases); *Harper v. Law Office of Harris & Zide LLP,* 2016 U.S. Dist. LEXIS 59417, *10 (N.D. Cal. May 4, 2016).  Establishing commonality does not require complete identity of the plaintiffs' claims.  *See, e.g., Takiguchi v. MRI Int'l., Inc.,* 2016 U.S. Dist. LEXIS 36129, *12 (D. Nev. Mar. 21, 2016). Moreover, "[t]he commonality requirement is a low hurdle easily surmounted."  *Pecover v. Elec. Arts Inc.,* 2010 U.S. Dist. LEXIS 140632, *37 (N.D. Cal. Dec. 21, 2010).

Plaintiff's claims easily satisfy the "commonality" requirement because all class members held the same job, performed the same primary job duty of delivering pizzas and other food to Defendants' customers using their personal vehicles, were compensated by similar hourly pay rates, drove similar delivery distances, Defendants reimbursed all of them with a comparable flat

rate per delivery and/or through other formulas, and their claims are based on the same legal theory. As stated above, Plaintiff maintains that a common legal theory holds that employees may recover vehicle costs when the employer's estimation of such costs is unreasonable, and the shortfall results in minimum wage deficits. *See, e.g., Edwards v. PJ Ops Idaho, LLC*, 2022 U.S. Dist. LEXIS 102861, at *8 (D. Idaho Jun. 7, 2022) (certifying Rule 23 class of pizza delivery drivers pursuing the same claim), petition for interlocutory appeal denied, Case No. 22-80056 (9th Cir. Aug. 19, 2022); *see also, e.g., Benton v. Deli Mgmt., Inc. d/b/a "Jason's Deli,"* 2019 U.S. Dist. LEXIS 135522, *45-46 (N.D. Ga. Aug. 8, 2019) (refusing to decertify a class asserting the exact same claim because "[t]he existence of so many" commonalities among the class, "including job descriptions, duties, and pay provisions (e.g., they were all paid hourly), as well as the central question of the reasonableness of Jason's Deli's current reimbursement.").

In fact, as stated above, the answer to a common question will drive resolution of all claims asserted:  what is a reasonable vehicle reimbursement rate for the class.  *See, e.g., Edwards*, 2022 U.S. Dist. LEXIS 102861, at *22 (finding that the sufficiency of the employer's reimbursement practices is a predominant common question); *Perrin v. Papa John's Int'l., Inc. ("Perrin II"),* 2014 U.S. Dist. LEXIS 133974, at *12 (E.D. Mo. Sept. 24, 2014) (recognizing that class-wide vehicle reimbursement claim can be proven through class-wide expert vehicle costing testimony); *Villalpando v. Exel Direct Inc.,* 2016 Dist. LEXIS 53773, *45 (N.D. Cal. Apr. 21, 2016) (finding that vehicle cost reimbursement claims can be proven through expert testimony regarding the applicable class-wide vehicle cost reimbursement rate). This clearly supports a finding of commonality.  Defendants do not agree with Plaintiff's assessment but do not oppose class certification *for settlement purposes only.*

### Rule 23(a)(3):  Typicality

"To satisfy the typicality requirement, Plaintiffs 'must show that the named parties' claims or defenses are typical of the claims or defenses of the class." *Maney*, 2022 U.S. Dist. LEXIS 61930, at *26-27 (citing *McKenzie*, 2020 U.S. Dist. LEXIS 72904, at *130-14 (citing Fed. R. Civ. P. 23(a)(3)).  Under typicality's "permissive standards," the "representative's claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* (quoting *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (quoting *Hanlon*, 150 F.3d at 1020).   In assessing "whether claims and defenses are typical, courts often look to 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *McKenzie*, 2020 U.S. Dist. LEXIS 72904, at *14) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Plaintiff's claims satisfy the "typicality" requirement of Rule 23(a)(3) as Plaintiff alleges that he was victimized in the same manner as the other class members by the aforementioned consistent vehicle cost reimbursement policy of Defendants, and all class members' claims depend on the exact same legal theory. *See also, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.").

### Rule 23(a)(4):  Adequacy of Representation

Rules 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." This requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members;" and (2) whether "the named plaintiffs and their counsel [will]

prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020; *Maney*, 2022 U.S. Dist. LEXIS 72904, at *15-16. Plaintiff's claims satisfy the "adequacy" requirement of Rule 23(a)(4) because his attorney is a veteran class action counsel, particularly in claims alleging under-reimbursement of automobile expenses in the pizza delivery industry, and because Plaintiff's interests are not antagonistic to the class members. Indeed, plaintiff sought to champion the class members' rights by seeking out counsel, providing counsel with information about the claims, filing class and collective claims, and actively negotiated for the benefit of the entire Class.

### Rule 23(b)(3): Predominance and Superiority

In addition, Plaintiff's claims satisfy Rule 23(b)(3), in that questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class. Again, to be specific, the predominant question for *every* class member is the reasonableness of Defendants' class-wide vehicle reimbursement rate. *See, e.g., Edwards*, 2022 U.S Dist. LEXIS 102861, at *20-22 (recently finding predominance of common issues in same claim by pizza delivery drivers); *Perrin II*, 2014 U.S. Dist. LEXIS 133974, *12; *Villalpando,* 2016 U.S. Dist. LEXIS 53773, at *45; *see also Benton*, 2019 U.S. Dist. LEXIS 135522, at *45-46 (recognizing that the "central" and "predominant" question dispositive of all class members claims is the reasonableness of an employer's vehicle reimbursements, and that question easily eclipses any differences between class members than an employer can identify). Defendants do not agree with Plaintiff's assessment but do not oppose class certification *for settlement purposes only.*

Finally, a class action is superior to other available methods for the fair and efficient adjudication of the controversy. There is no evidence that any class member desires to control his or her own claim, and any class member desiring that control may opt-out of the parties' settlement.

Counsel for the parties are unaware of any other pending litigation against Defendants entailing the same claim. For purposes of settlement, the class is manageable, it can easily be identified from Defendants' own records, a class action will foster judicial economy by avoiding duplicative litigation, and a class action will ensure that class members who are otherwise unaware that they possess a claim, or are unable to hire an attorney, will have their rights represented. These same considerations have warranted class certification in the similar claims by pizza delivery drivers. *See, e.g., Perrin v. Papa John's Int'l., Inc. ("Perrin I"),* 2013 U.S. Dist. LEXIS 181749, at *25-26 (E.D. Mo. Dec. 31, 2013); *Bass v. PJCOMN, Inc.,* 2011 U.S. Dist. LEXIS 58352, *10-11 (D. Colo. Jun. 1, 2011).

### B.    Certification of the FLSA Collective Action

Courts within this Circuit have found that approval of an FLSA collective action is not required to approve an FLSA settlement. *See, e.g., Gamble v. Boyd Gaming Corp.,* 2016 U.S. Dist. LEXIS 90159, *11-13 (D. Nev. Jul. 11, 2016). Other courts recognize that Rule 23 certification "necessarily" means that a collective action must be certified under the FLSA's less stringent "similarly situated" standard. *See, e.g., Lukas v. Advocate Health Care Network & Subs.,* 2015 U.S. Dist. LEXIS 109851, *22 (N.D. Ill. Aug. 19, 2015) ("Because Plaintiffs' proposed class meets the Rule 23 standards for class certification, it necessarily meets the much lower bar for FLSA collective action certification.").

Nevertheless, Plaintiff shows that the FLSA's "substantially similar" standard has been fulfilled. The Ninth Circuit has recognized three factors: (1) "'disparate factual and employment settings of the individual plaintiffs,'" (2) "'the various defenses available to defendants which appear to be individual to each plaintiff,'" and (3) "'fairness and procedural considerations.'"

*Campbell v. City of Los Angeles,* 903 F.3d 1090, 1113 (9th Cir. 2018) (quoting *Thiessen v. GE Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir. 2001)).

Here, all class members held the same job, performed the same primary job duty of delivering pizzas and other food to Defendants' customers using their personal vehicles, they were compensated by similar hourly pay rates, drove similar delivery distances, Defendants reimbursed them with the same or comparable rate per delivery and/or other formulas, and their claims are based on the same legal theory. Plaintiff submits that common legal theory holds that employees may recover vehicle costs when the employer's estimation of such costs is unreasonable, and the shortfall results in minimum wage deficits. *See, e.g., Perrin I,* 2013 U.S. Dist. LEXIS 181749, at *20-24 (explaining development of applicable law and citing cases); *Benton,* 2019 U.S. Dist. LEXIS 135522, at *42-48. Moreover, Defendants' primary defenses would be common, including use of a reasonable company-wide reimbursement rate and lack of duty to reimburse for certain components of the overall cost of driving, such as vehicle insurance.

In fact, Plaintiff maintains that the answer to one of two possible common questions will drive resolution of all claims asserted: either (1) what is a reasonable vehicle reimbursement rate for the class or (2) does the IRS rate apply. *See, e.g., Perrin II,* 2014 U.S. Dist. LEXIS 133974, at *12 (recognizing that class-wide vehicle reimbursement claim can be proven through expert vehicle costing testimony); *Villalpando,* 2016 Dist. LEXIS 53773, at *45 (finding that vehicle cost reimbursement claims can be proven through common evidence, specifically testimony regarding the applicable vehicle cost reimbursement rate); *Hatmaker v. PJ Ohio, LLC,* 2019 U.S. Dist. LEXIS 191790, at *5-22 (S.D. Ohio Nov. 5, 2019) (employer must either (a) track and reimburse actual vehicle costs or (b) reimburse at the IRS standards business mileage rate); *see also, e.g., Benton*, 2019 U.S. Dist. LEXIS 135522, at *45-46 (recognizing that the "central" question

dispositive of all class members' claims is whether the employer's vehicle reimbursement rate is reasonable). Defendants disagree. Nonetheless, this is sufficient to warrant certification of Plaintiff's FLSA claim for settlement purposes.

## II.    Approval of the Settlement

### A.    The Oregon Class Action Settlement Should Be Approved

"Approval under Rule 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re Premera Blue Cross Customer Data Sec. Breach Litig.,* 2019 U.S. Dist. LEXIS 127093, *3-4 (D. Or. Jul. 29, 2019) (quoting *Carlin v. DairyAmerica, Inc.,* 380 F.Supp.3d 998, 1005 (E.D. Cal. 2019) (quoting *Nat'l. Rural Telecomm's. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004)). Before a district court finally approves any settlement, compromise, or voluntary dismissal of any claim, issue, or defense in a certified class action, it must determine whether the proposed resolution is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2); *Hanlon,* 150 F.3d at 1026. However, "[t]o grant preliminary approval of a class action settlement, a court need only find that the settlement is within 'the range of reasonableness' to justify publishing and sending notice of the settlement to class members and the scheduling of a final approval hearing." *Pataky v. Brigantine, Inc.,* 2018 U.S. Dist. LEXIS 101663, *6-7 (S.D. Cal. Jun. 18, 2018) (quoting *In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079-80 (N.D. Cal. 2007)).

The Ninth Circuit has identified factors that a district court should evaluate in in determining whether to approve a settlement or compromise of a certified class action:

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery

completed and the stage of the proceedings; the experience and views of counsel;
the presence of a governmental participant; and the reaction of the class members
to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. Here, all of the *Hanlon* factors favor preliminary approval, except only

one factor which is inapplicable.

Notably, in evaluating the parties' proposed compromise, the Court need not reach its own

conclusions as to the expected value of litigating the claims through trial and appeal:

> [T]he court's intrusion upon what is otherwise a private consensual agreement
> negotiated between the parties to a lawsuit must be limited to the extent necessary
> to reach a reasoned judgment that the agreement is not the product of fraud or
> overreaching by, or collusion between, the negotiating parties, and that the
> settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. …
> Neither the trial court nor this court is to reach any ultimate conclusions on the
> contested issues of fact and law which underlie the merits of the dispute, for it is
> the very uncertainty of outcome in litigation and avoidance of wasteful and
> expensive litigation that induce consensual settlements. The proposed settlement
> is not to be judged against a hypothetical or speculative measure of what might
> have been achieved by the negotiators.

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Fran.*, 688 F.2d 615, 625 (9th

Cir. 1982); *see also Grewe v. Cobalt Mortg., Inc.*, 2016 U.S. Dist. LEXIS 98224, *8-9 (W.D. Wa.

Jul. 27, 2016) (citing *Officers for Justice*; *Rodriguez v. West Publ'g. ("W. Publ'g.)*, 563 F.3d 948,

965 (9th Cir. 2009) and recognizing that "the Ninth Circuit rejects the argument that a court must

specifically weigh the merits of the class's claim against the settlement amount and quantify the

expected value of fully litigating the matter.") (internal citations and alterations omitted).

### Factor 1:  Strength of the Plaintiff's Case

Plaintiff's claim is supported by substantial evidence, but ultimately that claim depends upon

persuading a jury to adopt their evidence over Defendants' competing evidence and arguments.

As stated above, the claims depend on competing expert vehicle costing testimony. *Perrin II*, 2014

U.S. Dist. LEXIS 133974, at *12; *Villalpando*, 2016 Dist. LEXIS 53773, at *45.  Courts recognize

that "[w]hen the success of a party's case turns on winning a so-called 'battle of experts,' victory

is by no means assured." *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266-7 (S.D.N.Y. 2012) (holding that such disputes "weigh in favor of approval."). Indeed, "it is virtually impossible to predict with certainty which testimony would be credited….". *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985), aff'd., 798 F.2d 35 (2d Cir. 1986). Predicting how a jury would weigh the evidence here is particularly difficult because no known benchmarks exist for how a jury might decide or value the claims. Consequently, it is possible the class members would recover less than the damages they allege, or no damages at all. Plaintiff and his counsel necessarily, and properly, weighed the risk of proceeding with an assured recovery obtained through negotiation. In sum, the uncertainty of a jury trial warrants settlement approval.

### Factor 2:  Risk, Expense, Complexity and Likely Duration of Further Litigation

"Class actions, in general, 'place an enormous burden of costs and expense upon [] parties.'" *Marshall v. Nat'l. Football League,* 787 F.3d 502, 512 (8th Cir. 2015). This case is no exception. Notably, Plaintiff's counsel has litigated similar claims for longer than six years prior to settlement. Potashnick Decl., ¶ 16.    As explained above, this litigation involved complex and novel issues. This litigation would be expensive, both to the parties in terms of expert costs and time and to the Court in terms of deciding difficult and complex issues. By reaching a favorable settlement now, the parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed. In addition, reducing the class trial to a judgment and the eventual appeal would likely involve complex and time consuming issues. Making substantial monetary relief available now, without significant additional time, effort, or risk, should weigh heavily in favor of approval.

### Factor 3:  Risk of Maintaining Class Action Status Through the Trial

Plaintiff recognizes some risk of denial of class certification. Although courts have certified

nearly every class claim, *Edwards*, 2022 U.S. Dist. LEXIS 102861, at *8 (certifying Rule 23 class of pizza delivery drivers pursuing the same claim), petition for interlocutory appeal denied, Case No. 22-80056 (9th Cir. Aug. 19, 2022); *Branning v. Romeo's Pizza, Inc.*, 2022 U.S. Dist. LEXIS 59262, at *5-24 (N.D. Ohio Mar. 29, 2022); *Waters v. Pizza to You, LLC,* 2021 U.S. Dist. LEXIS 11743, at *7-27 (S.D. Ohio Jan. 22, 2021); *Brandenburg v. Cousin Vinny's Pizza, LLC,* 2018 U.S. Dist. LEXIS 189878, *2-18 (S.D. Ohio Nov. 6, 2018) (certifying same class claim under Rule 23); *McFarlin v. The Word Enterprises, Inc.,* 2017 U.S. Dist. LEXIS 164968, *3-13 (E.D. Mich. Oct. 5, 2017) (same); *Perrin I,* 2013 U.S. Dist. LEXIS 181749, at *4-8 & 16-26 (same); *Bass,* 2011 U.S. Dist. LEXIS 58352, at *1-12(same); *Oregal v. PacPizza, LLC,* Case No. C12-01454 (Sup. Ct. of Contra Costa Cnty. May 8, 2014) (certifying similar claim under California class action rule) (Ex. 5); *Behaein v. Pizza Hut, Inc.,* Case No. BC541415 (Sup. Ct. of L.A. Cnty. Jul. 15, 2015) (Ex. 6) and a court refused to decertify a similar collective action claim following discovery, *Benton,* 2019 U.S. Dist. LEXIS 135522, at *42-48, one collective action was decertified, *Sullivan v. PJ United, Inc.,* 2018 U.S. Dist. LEXIS 143236 (N.D. Ala. Jun. 22, 2018).[1]  Plaintiff's counsel weighed that risk in negotiate the settlement amount.

> **Factor 4:   Amount Offered in Settlement**

The settlement provides meaningful monetary relief to the Plaintiff and the other delivery drivers and eliminates the inherent risks each side would bear if this complex litigation continued to resolution by a jury—an issue that, to the parties' knowledge, no jury has previously decided. The average recovery per delivery driver after attorney's fees, litigation costs, administrative costs and a service award will be $301.67.  Every class member will receive at least $25.00.  The

---

[1] Plaintiff's counsel consented to decertification in *Sullivan* based on individual arbitration agreements, which do not impact this litigation.

certainty of that consideration provides far more value to low-wage-earning workers than the mere possibility of some amount of recovery at an unknown future date.

**Factor 5:  Extent of Discovery Completed and the Stage of the Proceedings**

Although this claim settled early, counsel for the parties have litigated several similar claims by pizza delivery drivers around the nation.  Thus, they were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate damages.  Prior to mediation, Plaintiff's counsel disclosed the results of his data accumulation and his spreadsheet damage calculations with defense counsel in an effort to eliminate differences in perception which may have impeded productive mediation. The parties were also able to laser-focus their settlement efforts. Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieve settlement without additional involvement by this Court. Such achievement warrants settlement approval.

**Factor 6:  Experience and View of Counsel**

Class Counsel has recommended this settlement without hesitation as it is in the best interests of the class members.  That recommendation is based on Class Counsel's substantial experience in class litigation and litigation of numerous similar claims.  Therefore, this factor weighs strongly in favor of approval.  *See Gribble v. Cool Transports Inc.,* 2008 U.S. Dist. LEXIS 115560, *26 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

**Factor 7:  Presence of a Governmental Participant**

This factor is non-applicable.

**Factor 8:  Reaction of the Class Members to the Proposed Settlement**

Plaintiff and his counsel are not aware of any class member who intends to oppose the

settlement. *See, e.g., Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) (finding that the absence of any objections weighed in favor of approving a class action settlement). Moreover, experience indicates the unlikeliness of opposition to the settlement. In scores of similar settlements around the nation by Plaintiff's counsel, which have provided recoveries for many tens of thousands of pizza delivery drivers, there has only been one settlement objection asserted to date. However, that objector withdrew his objection prior to a final approval hearing. Still, this factor can be further addressed after notice to the class and opportunity to object.

### B.    The FLSA Collective Action Settlement Should Be Approved

To effect a binding release, the Ninth Circuit requires judicial or U.S. Department of Labor approval of FLSA settlements. *Seminiano v. Xyris Enter., Inc.*, 602 Fed. Appx. 682, 683 (9th Cir. 2015) (citing with approval *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). An FLSA settlement should be approved if the settlement is a "fair and reasonable resolution of a *bona fide* dispute." *Grewe*, 2016 U.S. Dist. LEXIS 98224, at *2 (quoting *Lynn's Food Stores*, 679 F.2d at 1355). "If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Id.* (quoting *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 U.S. Dist. LEXIS 179635, *6 (N.D. Cal. Dec. 19, 2012) (quoting *Lynn's Food Stores*, 679 F.2d at 1354)). The Court should readily conclude that the parties' settlement here constitutes a fair and reasonable resolution of a *bona fide* dispute. "[W]here the Court evaluates an FLSA collective action settlement, the standard is less exacting than when evaluating a Rule 23 class action settlement. This is because Rule 23 settlements bind all class members except those who affirmatively opt out, thus presenting the risk that a settlement will unknowingly bind individuals. In contrast, an FLSA settlement binds only those who affirmatively opt in." *Grewe,* 2016 U.S.

Dist. LEXIS 98224, *9 (internal citations omitted).[2]

As set forth above, in evaluating the parties' proposed compromise, the Court need not reach its own conclusions as to the expected value of litigating the claims through trial and appeal. *Officers for Justice*, 688 F.2d at 625; *Grewe*, 2016 U.S. Dist. LEXIS 98224, at *8-9.

### 1.  There Was A *Bona Fide* Dispute

A settlement addresses a *bona fide* dispute when it "reflect[s] a reasonable compromise over issues ... that are actually in dispute." *Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (quoting *Lynn's Food Stores*, 679 F.2d at 1355). Here, Plaintiff alleged that under-reimbursed automobile expenses caused minimum wage violations. Defendants deny Plaintiff's substantive allegations, assert that Plaintiff was reasonably reimbursed for vehicle costs, and contend that Plaintiff was compensated at or above the applicable minimum wage.

Defendants produced, and the parties analyzed, detailed data specific to Plaintiff's allegations of liability and damages. If a jury agreed with Plaintiff's allegations about a reasonable reimbursement rate, Defendants could have faced a sizable monetary judgment, which could include liquidated damages, as well as the obligation to pay Plaintiff's attorneys' fees and costs. On the other hand, if a jury agreed with Defendants about a reasonable reimbursement rate, Plaintiff would obtain no recovery whatsoever. These facts clearly demonstrate the existence of a *bona fide* dispute.

Finally, the settlement was the product of arm's-length negotiations by experienced counsel, facilitated by a highly experienced and skilled mediator, Kay Wolf.

---

[2] Some courts hold that "[b]ecause 'the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* [approval] factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Ramos v. Nikodemo Op. Corp.,* 2017 U.S. Dist. LEXIS 216246, *14-15 & 20 (E.D.N.Y. Aug. 7, 2017) (quoting and citing cases).

### 2.  The Settlement Is Fair and Reasonable

The settlement provides meaningful monetary relief to the Plaintiff and the other delivery drivers and eliminates the inherent risks each side would bear if this complex litigation continued to resolution by a jury—an issue that, to the parties' knowledge, no jury has previously decided.

Courts typically rely on the adversarial nature of a litigated FLSA case resulting in settlement as an *indicia* of fairness. *See Lynn's Food Stores*, 679 F.2d at 1354. The settlement creates a settlement fund that will be paid to the Named Plaintiff and all other delivery drivers.  Distributions from the settlement fund will be allocated to the delivery drivers based on an equitable formula considering the total number of deliveries each of them performed, miles driven, and the amounts previously reimbursed by Defendants.  Ex. 1, ¶ 2.1(B). The amount of the settlement fund falls well between the maximum amount Plaintiff might have recovered if he prevailed on every claim, and zero, the amount they would have recovered if Defendants prevailed instead. Thus, the settlement represents a fair and reasonable compromise.

To determine whether settlement terms are fair and equitable to all parties, courts consider factors including (1) the settlement negotiations between the parties, (2) the settlement amount to be paid to the plaintiffs, (3) the individual settlement amounts to each person, (4) the litigation risks, and (5) the scope of the release. *See Ambrosino v. Home Depot U.S.A., Inc.*, 2014 U.S. Dist. LEXIS 111109, *4-5 (S.D. Cal. Aug. 11, 2014). Put in slightly different terms, "[th]e Court considers factors such as the risk, expense, complexity, and likely duration of litigation; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; and the reaction of putative members to the proposed settlement." *Grewe,* 2016 U.S. Dist. LEXIS 98224, *3. These factors show this settlement to be fair and reasonable.

**Factor 1: The Settlement Is the Result of Arm's-Length Negotiations.**

Prior to negotiations, Defendants produced comprehensive mileage and vehicle reimbursement data. This allowed for a detailed analysis of Plaintiff's claims and quantification of potential damages. Ex. 3, Declaration of Mark Potashnick, ¶ 8. The parties were only able achieve a settlement after a full day of contentious mediation. *Id.*, ¶16. Moreover, both sides were represented by counsel experienced in wage and hour litigation generally, and in litigating similar cases specifically. Plaintiff's counsel have represented employees in FLSA claims, and particularly, in scores of similar delivery driver reimbursement cases around the nation. Ex. 3, ¶¶ 4-5 & 7. Indeed, courts have recognized that Plaintiff's counsel are the "pioneers" and "innovators" of pizza delivery driver FLSA cases. *See, e.g., Sagendorf v. Quality Huts, LLC*, 2021 U.S. Dist. LEXIS 213619, at *9 (N.D. Ind. Nov. 3, 2021) ("Plaintiffs' attorneys have really pioneered minimum wage claims based on under-reimbursed vehicle costs, and have obtained many key rulings in this field."); *Jimenez v. Pizzerias, LLC*, 2017 U.S. Dist. LEXIS 129820, at *11 & *13-14 (S.D. Fla. Aug. 14, 2017) (similar, plus recognizing that "Plaintiffs' Counsel in this matter are experienced and innovative wage and hour lawyers who have developed expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.").

Likewise, Defendants' counsel has defended numerous FLSA actions and litigated several employment claims in this court. Thus, the settlement is clearly the product of informed arm's-length negotiations. *See W. Publ'g.*, 563 F.3d at 965 (the court should "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (an arms-length settlement after hours of negotiations with a third-party neutral is "highly indicative of fairness").

**Factors 2 and 3: Plaintiff's Recovery Is Fair and Reasonable.**

The Settlement Agreement provides for individual checks to all of the delivery drivers in specified amounts that will provide them with the equivalent of an increased reimbursement rate for each delivery made in exchange for a release of their federal and state wage and hour claims. The parties negotiated a limited, not general, release. The settlement was reached by negotiating a reimbursement rate between the IRS rate, which was Plaintiff's position, and the rate paid by Defendants, with neither side conceding that such a compromise rate is reasonable or proper. While many delivery drivers will receive much more, every Plaintiff will receive at least $25.00. Equitably, Plaintiffs who made more deliveries will receive larger amounts than those Plaintiffs who made less deliveries. *See Ambrosino*, 2014 U.S. Dist. LEXIS 111109, *5 (use of individual wage and hour data supports reasonableness of settlement). This is meaningful relief to low-wage-earning workers.

**Factor 4: The Litigation Risks Are Significant.**

The risks that existed for both sides if litigation continued were significant. *See Nat'l. Rural Telecomms.*, 221 F.R.D. at 526 ("unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results"). If the litigation were to continue, Plaintiff would likely face a motion to decertify the collective action and a dispositive motion. And, if Plaintiff survived those challenges, he would still face a jury trial. Further, the ultimate fact question—what constitutes a "reasonable reimbursement"—would be the subject of competing expert testimony. The jury's determination of that question would decide liability and damages. The amount of damages, if any, could vary greatly depending on the reasonable reimbursement rate determined by the jury. Further, whether a jury would find any

violation willful to extend the limitations period to the third year is also unknown. Thus, success

on the merits is far from assured, and this factor strongly supports approval of the settlement.

### Factor 5:  Scope of the Release Is Commensurate with the Claims Asserted.

The release provided by the delivery drivers is appropriately limited to wage and hour claims

that were or could have been brought in the litigation.  Ex. 1, ¶ 3.1(B). Accordingly, Defendants

have not overreached with respect to the terms of the settlement. *See Ambrosino*, 2014 U.S. Dist.

LEXIS 111109, *5-6 (a proper release tracks the breadth of the allegations).

Based on each of these factors, the Court should approve the settlement because the record

demonstrates the settlement is a fair and reasonable compromise of a *bona fide* dispute.

## III.    Attorney's Fees and Costs Provided in the Settlement are Appropriate

The Settlement Agreement provides that Plaintiff's counsel will recover their fees from the

Settlement Amount. Ex. 1, ¶ 2.1(A)(3). The FLSA and Oregon law entail fee and cost shifting

provisions. 29 U.S.C. § 216(b); O.R.S. § 653.055(4).  As various courts have observed, the theory

behind attorneys' fee awards in representative actions is that "a financial incentive is necessary to

entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote

their time to complex, time-consuming cases for which they may never be paid." *Mashburn v.*

*Natl. Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) (cited with approval in *Paul,*

*Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In other words, fee awards

to counsel further the remedial goals of the FLSA of and Oregon law of protecting workers from

wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure

every employee receives "a fair day's pay for a fair day's work"). The Supreme Court has

"recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons

other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Yue Zhou v. Wang's Restaurant*, 2007 U.S. Dist. LEXIS 60683, *4-5 (N.D. Cal. Aug. 8, 2007) ("Because a court supervised settlement of FLSA overtime claims is ultimately reduced to a judgment, under the FLSA an award of reasonable fees is mandatory."). The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Boeing Co.,* 444 U.S. at 478-79.

The settlement agreement here authorizes an award of fees *and costs* equal to of one-third (1/3) of the total settlement amount. Other courts in this Circuit have approved the same percentage in exact same claims. *See, e.g.*, *Anderson v. Mountain View Pizza Co.*, Case No. 1:18-CV-00058-SPW-TJC (D. Mont. Apr. 29, 2020) (ECF Doc. # 118) (Ex. 7) (final approval order); *Anderson v. Mountain View Pizza Co.*, Case No. 1:18-CV-00058-SPW-TJC (D. Mont.) (ECF Doc. # 117) (Ex. 8) (motion for final settlement approval); *Abel v. Austyn Spencer Enterpr., LLC*, Case No. 18-CV-BLG-SPW (D. Mont. Mar. 11, 2020) (ECF Doc. # 45) (Ex. 9) (final approval order); *Abel v. Austyn Spencer Enterpr., LLC*, Case No. 18-CV-BLG-SPW (D. Mont.) (ECF Doc. # 41) (Ex. 10) (motion for final settlement approval); *Kirkwood v. Noble Food Grp., Inc.,* 2019 U.S. Dist. LEXIS 10146, *1-4 (W.D. Wa. Jan. 22, 2019); *Armes v. Hot Pizzas, LLC,* 2017 U.S. Dist. LEXIS 89920, *12-15 (D. Ariz. Jun. 9, 2017); *Larson v. Desert Sun Pizza, LLC,* Case No. 3:16-cv-08011-SRB (D. Ariz. Jan. 5, 2017) (Ex. 11).

The Ninth Circuit has recognized a loose benchmark of 25% in Rule 23 class actions involving passive plaintiffs and this District has recognized that "[i]n cases where recovery is uncertain, an

award of one third of the common fund as attorneys' fees has been found to be appropriate." *Demmings v. KKW Trucking, Inc.*, 2018 U.S. Dist. LEXIS 159749, at \*39 (D. Or. Sept. 19, 2018) (quoting *Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist. LEXIS 169057, at \*46 (E.D. Cal. Nov. 27, 2012)); *Bell v. Consumer Cellular, Inc.*, 2017 U.S. Dist. LEXIS 95401, at \*30 (D. Or. Jun. 21, 2017) (same).  Further, courts in this Circuit recognize that most percentage fee awards exceed the benchmark. *See, e.g.*, *Syed v. M-1, LLC*, 2017 U.S. Dist. LEXIS 118064, \*15-18 (E.D. Cal. July 27, 2017) (awarding fees of 1/3 of FLSA and Rule 23 settlement fund); *Bell v. Consumer Cellular, Inc.,* 2017 U.S. Dist. LEXIS 95401, \*33 (D. Or. Jun. 21, 2017) (recognizing that "Courts have commonly approved awards of approximately 33% in [wage and hour] cases." (citing cases)); *Hopkins v. Stryker Sales Corp.,* 2013 U.S. Dist. LEXIS 16939, \*8-10 (N.D. Cal. Feb. 6, 2013) (awarding 1/3 fee and citing 6 cases awarding at least 1/3 fee); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 492 (E.D. Cal. 2010) (33.3% fee awarded); *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 111497, \*17-18 (N.D. Cal. Feb. 2, 2009) (30% fee awarded). Indeed, in "most common fund cases, the award exceeds that benchmark." *Vasquez*, 266 F.R.D. at 491 (internal quotation marks omitted).

To ensure a fee award is reasonable, this Circuit applies "the *Kerr* factors," to cross-check the ultimate reasonableness of an attorneys' fee award: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent;[3] (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and

---

[3] This factor is no longer applied.  *In re Bluetooth,* 654 F.3d at 942 n.7.

length of the professional relationship with the client; and (12) awards in similar cases." *In re Bluetooth*, 654 F.3d at 942 n.7 (9th Cir. 2011) (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69 (9th Cir. 1975)). All "*Kerr* factors" support preliminary approval of the requested fee.

> ### *Kerr* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation and Ability of the Attorneys; and "Undesirability" of the Case.

Minimum wage lawsuits based on under-reimbursed expenses were extremely rare before Plaintiff's counsel's efforts on behalf of pizza delivery drivers. Previous cases prosecuted by Plaintiff's counsel provided significant and novel challenges, and ultimately yielded favorable decisions on pleading, certification, and methods of proof. *See, e.g., Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim" and "[t]he present case does not involve a straightforward claim under the FLSA for unpaid amounts")). *See, e.g., Wass v. NPC Int'l*, Inc., 688 F.Supp.2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim."; "The present case does not involve a straightforward claim under the FLSA for unpaid amounts; rather, … [t]his case… demands a greater degree of specificity in pleading" than other FLSA cases.)).

Under the defendants' threats of seeking sanctions in both the *NPC case* and *Smith v. Pizza Hut, Inc.*, Case No. 09-CV-01632 WDM-BNB (D. Colo.) if their theory proved incorrect, Plaintiff's Counsel persisted because they believed in the merits of their case, and the Court ultimately endorsed their argument that a plaintiff need not prove his or her actual expenses, but can reasonably approximate those expenses. *See id*. These rulings paved the way for conditional

certification of the FLSA claims here, and ultimately this settlement.

The U.S. District Court for the District of Maryland recognized:

> In some of these cases, [Claimants' Counsel] have represented pizza delivery drivers situated precisely as Claimants have been in the present case. In addition, the quality of the pleadings, motions, and briefs in the case fully evidences Class Counsels' skill, competence, and knowledge of the applicable law.

> …the fees are reasonable based on Class Counsels' skill. [Claimants' Counsel] are experienced and innovative wage and hour lawyers, which appears to be a niche practice. They have developed an expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.

*Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 368 (D. Md. Dec. 19, 2016); *see also, e.g., Jimenez*, 2017 U.S. Dist. LEXIS 129820, at *13-14 ("…Plaintiffs' Counsel in this matter are experienced and innovative wage and hour lawyers who have developed expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.").

The fact that rulings from other courts – obtained by Plaintiff's Counsel - may have helped them obtain early resolution of this case does not minimize the risk in this case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636-37 (7th Cir. 2011). As explained by the Seventh Circuit in rejecting a similar argument, while these prior decisions bolstered Plaintiff's position, no court of appeals has addressed these issues. Similarly, none of the other pizza delivery driver cases have been submitted to a jury, thus leaving the ultimate resolution as a critical unknown. Trial would be expert-intensive and thus costly. Plaintiff would need to provide documentary evidence, lay testimony, and expensive expert testimony sufficient to establish liability and damages for all Plaintiffs. Further, regardless of the outcome at trial, post-judgment appeals would be likely.

Additionally, Plaintiff's counsel possess extensive experience in all types of wage and hour litigation. Ex. 3, ¶¶ 3-6. In light of the novelty and difficulty of the questions presented, the skill,

experience, reputation, and ability of Plaintiff's attorneys, and "undesirability" of the case, *Kerr* factors (2), (3), (9) and (10) all strongly support Plaintiff's counsels' requested fee.

**_Kerr_ Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.**

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *accord In re Bluetooth*, 654 F.3d at 942. As noted above, given the novelty and difficulty of cases involving minimum wage laws vis-à-vis reimbursable expenses, the delivery drivers' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the parties following contentious mediation is a very successful result for Plaintiff. The total settlement amount is the result of good faith, but contentious, arm's-length negotiation and represents an excellent result for the opt-ins in this case. Some opt-ins will receive substantial payments for their alleged unreimbursed vehicle expense. And while some opt-ins will receive less than others – based on relatively shorter employment – no opt-in will receive less than $25.00.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is less than Plaintiff's Counsel's customary contingent fee in wage and hour litigation, which ranges between one-third and 40% of any recovery.

**_Kerr_ Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.**

Plaintiff's counsel's firms combined spent over 75 hours litigating this case with no assurance of any recovery at all. Ex. 3, ¶ 9; Ex. 4, Declaration of Matthew Haynie, ¶ 16. This includes time spent investigating the facts, preparing and filing pleadings, reviewing documents produced by the Named Plaintiff and by Defendants, analyzing Defendants' payroll, delivery, and reimbursement data, communicating with the Named Plaintiff, creating computerized damages models,

researching and drafting a mediation statement, participating in the mediation, negotiating the terms of the settlement, drafting approval papers, and seeking the Court's approval of the settlement. Ex. 3, ¶¶ 8-9 ; Ex. 4, ¶¶ 15-16.

Plaintiff's Counsel's lodestar is based on their standard hourly billing rates for work of this type. Ex. 3, ¶¶ 9-10; Ex. 4, ¶¶ 14-16; *Compton v. N. Cent. Va. Rests., Inc.*, 2022 U.S. Dist. LEXIS 159070, at *14 & n.3 (W.D. Va. Sept. 2, 2022) (finding $500.00 rate for Mark Potashnick reasonable); *Nelson v. PJ Cheese, Inc.*, 2021 U.S. Dist. LEXIS 114633, at *5-6 (N.D. Ga. Jun. 17, 2021) (awarding Mark Potashnick fees at rate of $500.00 per hour); *Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-170-JCD (E.D.N.C. Aug. 28, 2020) (ECF No. 24) (Ex. 12) (finding Mr. Potashnick's $500.00 hourly rate to be "reasonable"); *Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-170-JCD (E.D.N.C. Aug. 20, 2020) (ECF No. 21) (Ex. 13) (fee and cost petition seeking $500.00 per hour for Mr. Potashnick); *Sagendorf,* 2021 U.S. Dist. LEXIS 213619, at *11 (approving Mr. Potashnick's fees based $500.00 per hour rate); *Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-00296-TCB (N.D. Ga. Jan. 28, 2020) (Ex. 13), at 8 (finding Mr. Potashnick's rate of $500.00 per hour to be "reasonable"); *Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-00296-TCB (N.D. Ga.) (ECF Doc. # 138) (Ex. 14), at 5, 12 & 13 (seeking fees for Mark Potashnick at rate of $500.00 per hour); *Burton v. DRAS Partners, LLC,* Case No. 19-cv-02949-SJC (N.D. Ill. Nov. 15, 2019) (ECF No. 35) (Ex. 15) (approving recovery of Mark Potashnick's fees at $500.00 per hour rate); *Rice v. PJ Cheese, Inc.,* AAA Case No. 01-20-0014-8150 (Bennett Apr. 13, 2022) (Ex. 16) ; *Hidalgo v. Quality Huts Midwest, LLC,* AAA Case No. 01-20-0010-0139 (Gilbert Oct. 27, 2021) (same); *Morse v. Parts Authority, LLC*, AAA Case No. 01-20-0003-8372 (Modica Jul. 23, 2021), at 4-6 (same); *Omelet v. Parts Authority, LLC,* AAA Case No. 01-20-0003-8239 (Pines May 3, 2021) (same); *Nelson v. PJ Cheese, Inc.,* AAA Case No. 01-19-0001-5314 (Kimmel) (same); *see*

*also Pannell v. Parts Authority,* LLC, AAA Case No. 01-20-0009-6223 (Weinstock Oct. 25, 2021) (approving Mr. Potashnick's rate of $919.00 per hour); *Thompson v. Parts Authority, LLC*, Index No. 500141/2022 (Sup. Ct. of Kings Cnty., N.Y. Aug. 31, 2022) (Ex. 22) (finding Mr. Potashnick's $600.00 per hour rate reasonable); *Thompson v. Parts Authority, LLC*, Index No. 500141/2022 (Sup. Ct. of Kings Cnty., N.Y. Aug. 31, 2022) (Ex. 23) (motion seeking fees at $600.00 per hour rate with 5.2 multiplier); Ralph *v. HAJ, Inc.,* 2021 U.S. Dist. LEXIS 59813, at *18 (S.D. Cal. Mar. 29, 2021) (approving fees at $575.00 hourly rate).

These rates, and much higher, have been approved as reasonable in numerous wage-and-hour cases, and courts in this Circuit frequently approve substantially higher hourly rates. *See, e.g.*, *Pittsley v. City of El Cajon,* 2019 U.S. Dist. LEXIS 141335, *19-20 (S.D. Cal. Aug. 19, 2019) (finding $650.00 per hour to be reasonable rate for wage and hour litigator with over 25 years experience); *Thomas v. Kellogg Co.*, Case No. 3:13-cv-05136-RBL (W.D. Wash.) (Dkt. 537, p. 25; noting rates as high as $800 per hour in wage-and-hour collective action); *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975, 984 (N.D. Cal. 2017) (approving hourly rates ranging from $300.00 to $900.00); *Velazquez v. Int'l Marine and Indus. Applicators, LLC*, 2018 U.S. Dist. LEXIS 21884, *25 (S.D. Cal. Feb. 9, 2018) (approving fee award; lodestar cross-check at hourly rate up to $800.00); *Bickley v. CenturyLink, Inc.*, 2016 WL 9046911, *5 (C.D. Cal. Nov. 29, 2016) (approving hourly rates of $650.00 to $750.00 in misclassification / overtime case). And, while the lodestar cross-check reflects a multiplier of 3.2, such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). Accordingly, courts routinely enhance

lodestar amounts based on multipliers ranging from 2 to 4, or even higher. *See id.* (approving multiplier of 3.65).

This work naturally precluded counsel from pursuing other litigation opportunities. In addition, Plaintiff's counsel will be required to expend significant additional time administering the settlement, which requires distributing individual recoveries and communicating with numerous class members.

### *Kerr* Factor (12): Awards in Similar Cases.

Plaintiff's counsel's fees equal to one-third (1/3) of the total recovery have been approved within this Circuit in the same claims against other pizza delivery companies. *Anderson* (Exs. 7 & 8); *Abel* (Exs. 9 & 10); *Kirkwood,* 2019 U.S. Dist. LEXIS 10146, at *1-4; *Armes,* 2017 U.S. Dist. LEXIS 89920, at *12-15; *Larson* (Ex. 11); *see, e.g.*, *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, at 1123-27 (C.D. Cal. 2008) (noting Silber and Goodrich's conclusion "that a 33% fee award is both reasonable, and in line with the general market for contingent fee work"); *Barbosa*, 297 F.R.D. 431, at 451 (33% of the class recovery is reasonable and approved based on the risk of litigation, fee awards in other wage-and-hour cases). Further, because the common fund is a relatively low fund, a one-third recovery is fair and commonplace for contingent fee work.  *See Van Vranken v. A. Richfield Co.*, 901 F.Supp. 294, 297 (N.D. Cal. 1995) (funds under the $10 million mark are considered smaller, justifying a higher percentage attorney's fee). As such, Plaintiff's counsels' fee recovery in this case is more than reasonable.

Notably, the percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiff's counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. Third, use of the percentage method decreases the burden imposed on the court by the "lodestar" method and assures that plaintiffs do not experience undue delay in receiving their share of the settlement.

The diligent work by Plaintiff's counsel in obtaining relief for all Defendants' delivery drivers should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

## IV.    Plaintiff Yates Deserves a Service Award

The Settlement Agreement provides for a reasonable service award of $7,500.00 to the Named Plaintiff. Ex. 1, ¶ 2.1(A)(2). Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *W. Publ'g.*, 563 F.3d at 958-59; *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (service awards are appropriate in FLSA collective actions for same reasons as in Rule 23 class actions); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (service awards "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits").

Factors bearing on the decision of whether to grant a service award include, as relevant here, the actions taken by the named plaintiff to protect the interests of all other delivery drivers, the degree to which the delivery drivers have benefited from those actions, and the amount of time

and effort the named plaintiff expended on the litigation. *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, Named Plaintiff Yates substantially assisted counsel in achieving this settlement on behalf of all of Defendants' delivery drivers who have been employed during the recovery period. He first sought and obtained counsel with specific experience in minimum wage/vehicle reimbursement claims and initiated this action. He provided ongoing guidance to counsel. He endeavored to protect the interests of all of Defendants' delivery drivers and to obtain a substantial recovery on their behalf. He participated throughout the day-long mediation, and vigorously negotiated on behalf of all of Defendants' delivery drivers. Ex. 2, ¶14. The other delivery drivers have substantially benefitted from the Named Plaintiff's efforts. In light of these efforts, a modest service award is justified. The award also falls well within the range of other service awards typically approved by courts in this Circuit. *See, e.g.*, *Preston v. Porch.com*, 2022 U.S. Dist. LEXIS 144930, at *15-17 (S.D. Cal. Aug. 12, 2022) (approving $10,000.00 service award); *Garibay v. Wyndham Vacation Ownership, Inc.*, 2022 U.S. Dist. LEXIS 108652, at *8 (D. Nev. Jun. 17, 2022) (approving $10,000.00 service award); *Arredondo v. S.W. & Pac. Specialty Fin., Inc.*, 2022 U.S. Dist. LEXIS 101568, at *51 (E.D. Cal. Jun. 6, 2022); *May v. Wynn Las Vegas, LLC*, 2021 U.S. Dist. LEXIS 15898, at *10 (D. Nev. Jan. 25, 2021) (approving $15,000.00 incentive award to each of three named plaintiffs). Defendants do not oppose the service award.

## V.    The Court Should Approve the Proposed Collective Action Class Notice

To approve a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, the notice of settlement attached as "Exhibit 2" will be mailed to class members at their last known addresses, complying with the highest level of notice recognized by law.

The Notice explains in clear terms (1) the nature of the settlement and the claims released, (2) the minimum amount each class member has been allocated, and (3) the opportunity to include or exclude oneself or object to the settlement.  The Notice informs class members of the terms and provisions of the settlement agreement; the relief the settlement will provide; the scope of the releases; the date, time and place of the final approval hearing; and the procedures and deadlines for submitting comments or objections. Additionally, the proposed class notice advises class members of the amount of fees and costs that Plaintiff's counsel seek and the amount of the proposed service award to be paid to the Named Plaintiff who substantially aided in the prosecution of the case. The proposed class notice is accurate and fully informs class members of the material terms of the settlement and their rights pertaining to it. The Court should approve the proposed form and method of class notice of first-class mail to each class member's last-known address.

### Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and issue an Order that:

(a)  certifies an Oregon class action for purposes of settlement;

(b)  certifies an FLSA collective action for purposes of settlement;

(c)  preliminarily finds that the parties' settlement of the Oregon class claims appears to be fair, reasonable, and adequate as to members of the collective action class, subject to any objections that may be raised at the final fairness hearing and final approval of the collective action class settlement by this Court;

(d)  finds that the parties' settlement of the FLSA claim appears to be fair, reasonable, and adequate as to members of the collective action class,

(e)  grants preliminary approval of the Oregon class action settlement;

(f)  grants approval of the FLSA collective action settlement;

(f)  approves as to form and content the parties' proposed notice as reasonable notice practicable under the circumstances and in full compliance with applicable law;

(g)  orders that each class member be given a full opportunity to file a claim, object to, or opt-out of the Settlement Agreement, and to participate at the final approval hearing;

(h)  schedules a final fairness hearing; and

(i)  awards such further relief as the Court deems equitable and just.

<div style="margin-left:40%">

Respectfully submitted,
**WEINHAUS & POTASHNICK**
*/s/ Mark Potashnick*
Mark A. Potashnick (Mo. Bar # 41315)
(admitted *pro hac vice*)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

**CRISPIN MARTON CAMBRELENG**
Ashley A. Marton
Rebecca Cambreleng
1834 SW 58th Avenue, Suite 200
Portland, OR 97221
Phone: 503-293-5770
Email: ashley@employmentlaw-nw.com
Email: rebecca@employmentlaw-nw.com

</div>

## CERTIFICATE OF SERVICE

The undersigned hereby certified that a true and correct copy of the foregoing was served on all attorneys of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.


*/s/ Mark Potashnick*