UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | | |
|---|---|---|
| DANIEL YATES, individually and on behalf of similarly situated persons, | ) ) ) | Case No. 3:21-cv-1125-YY |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| JAK PIZZA, INC., a domestic corporation; and TIMOTHY R. HAMMER, an individual, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S CONSENT MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

Plaintiff Daniel Yates, on behalf of himself and all others similarly situated, through his attorneys, with the consent of Defendants JAK Pizza, Inc. and Timothy R. Hammer, through their attorneys, moves the Court for final approval of the parties' class action settlement.

A copy of the parties' executed Settlement Agreement is attached as "Exhibit 1." The declarations of Plaintiff's attorneys, Mark Potashnick and Matthew Haynie, in support of this motion and brief are attached as "Exhibit 2" and "Exhibit 3," respectively. Plaintiff incorporates the following Memorandum in Support. The parties have reached a settlement on behalf of approximately 760 class members. The settlement meets the standards for granting final approval of a class action settlement.

**Facts and Procedural History**

Defendants operate a chain of six Domino's Pizza franchise stores in Oregon.

Plaintiff Daniel Yates worked for Defendants as a delivery driver from about August 2019 to March 2020 at Defendants' Domino's Pizza store located at 325 Southeast First Avenue, Canby, Oregon, 97013.

On July 30, 2021, Plaintiff filed suit against Defendants on behalf of himself and similarly situated delivery drivers currently and formerly employed by Defendants. Plaintiff alleged that Defendants under-reimbursed their delivery drivers' vehicle costs incurred on the job, thereby reducing their net wages below the federal and state minimum wage rates (nominal wages – unreimbursed vehicle costs = subminimum net wages). Further, Plaintiff alleged that Defendants applied substantially the same reimbursement formula and rate to all of their delivery drivers during the recovery period.

Shortly after entering his appearance, Plaintiff's current counsel informed Defendants of Plaintiff's intention to file an amended complaint to add allegations that Defendants violated Oregon's minimum wage statutes, O.R.S. Ch. 653; a six-year statute of limitations under O.R.S. § 12.080 applies; and a claim seeking statutory penalties under O.R.S. §§ 652.150 and 653.055(1)(b).

Such discussions led counsel to agree to disclosure of data needed to evaluate liability and calculate damages, followed by mediation or another form of negotiations.

Defendants produced that data, which Plaintiff's counsel synthesized into weekly spreadsheet damage calculations, which Plaintiff disclosed to Defendants. Both sides thoroughly analyzed those calculations, then scheduled mediation.

On July 20, 2022, the parties mediated for a full day with Kay L. Wolf, a highly experienced and well-respected wage and hour and class action mediator. Through that mediation, the parties reached an accord resulting in the settlement agreement filed herewith. Named Plaintiff Yates actively participated in each round of the mediation. The attorneys who negotiated on behalf of the parties are experienced litigators, and they vigorously represented their clients' respective interests. Ex. 2, ¶¶ 1-7.

The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously-disputed legal and factual issues. It considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals. *Id.* ¶ 16.

## Key Settlement Terms

The parties executed a Settlement Agreement and Release of Claims. Exhibit 1. In sum, they agreed to settle all putative class members' wage and hour claims by Defendants paying $375,000.00 inclusive of payments to class members, litigation costs, administrative costs, a service award, and attorney's fees. Separately and additionally, Defendants' will pay the mediator's fee. The remaining settlement funds will be distributed to class members who submit claims based on the following equitable formula:

> (Total workweeks during the recovery period by each class member / all Class Members' workweeks during the recovery period) x net settlement fund.

The net settlement fund is equal to the gross settlement fund less litigation costs, administrative costs, service award, attorney's fees and funds paid to achieve minimum distribution amounts. All class members will receive at least $25.00. *See* Settlement Agreement, ¶ 2.1(B).

The release binding Class Members who do not opt out is:

> Each Class member releases all claims accrued from January 1, 2016 through December 31, 2021, that were or could have been made against the Released Parties in this Litigation based on the allegations of the Complaint, or similar wage-based claims, based on the same facts alleged in the Complaint, including all claims under the Fair Labor Standards Act, 29 U.S.C.§ 201, et. seq., and state wage and hour laws, whether known or unknown, including but not limited to any and all claims arising out of any federal or state wage or minimum wage or overtime pay laws; any and all claims for breach of contract; any and all claims for unpaid or underpaid employee expense reimbursement; any and all claims for unjust enrichment; and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Released Parties.

*See* Settlement Agreement, ¶ 3.1(B).

Based on his service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, named Plaintiff Yates seeks a modest service award of $7,500.00. *Id.*, ¶ 2.1(A)(2).

Subject to this Court's approval, Plaintiff's Counsel will receive fees and litigation costs equal to one-third of the gross settlement amount. Defendants do not oppose or object to this request for attorneys' fees and costs. *See id.*, ¶ 2.1(A)(2).

The parties jointly selected CPT Group as the settlement administrator. Its fees will be paid from the maximum settlement amount. *See id.,* ¶ 2.1(A)(5).

The Court's approved notice of class action settlement (the "Notice") was mailed to all putative class members shortly after the Court's preliminary approval of the settlement. ECF 29. The Notice explains in clear terms (1) the nature of the settlement, (2) the factors used to determine the amount each class member has been allocated under the settlement, and (3) each class member's right to object to the settlement or exclude himself from the settlement.

After dissemination of the notice, no class member has opted out and no class member has objected to the settlement or any of its terms.

### The Preliminary Approval Order

On September 12, 2022, the Court entered its an Order (a) certifying an Oregon class action for purposes of settlement; (b) certifying a Fair Labor Standards Act ("FLSA") collective action for purposes of settlement; (c) preliminarily finding that the parties' settlement of the Oregon class claims appears to be fair, reasonable, and adequate as to members of the collective action class, subject to any objections that may be raised at the final fairness hearing and final approval of the collective action class settlement by this court; (d) finding that the parties' settlement of the FLSA claim appears to be fair, reasonable, and adequate as to members of the collective action class; (e)

granting preliminary approval of the Oregon class action settlement; (f) granting approval of the FLSA collective action settlement; (g) approving as to form and content the parties' proposed notice as reasonable notice practicable under the circumstances and in full compliance with applicable law; (h) ordering that each class member be given a full opportunity to file a claim, object to, or opt-out of the settlement agreement, and to participate at the final approval hearing; and (i) ordering a final fairness hearing to be scheduled. ECF 29, at 2.

That leaves the sole issue of final approval of the parties' class action settlement.

## Argument

### I.    Approval of the Class Action Settlement

#### A.    The Oregon Class Action Settlement Should Be Approved

Before a district court finally approves any settlement, compromise, or voluntary dismissal of any claim, issue, or defense in a certified class action, it must determine whether the proposed resolution is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Ninth Circuit has identified factors that a district court should evaluate in in determining whether to approve a settlement or compromise of a certified class action:

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. Here, all of the "*Hanlon* factors" favor final approval, except only one factor that is inapplicable.

Notably, in evaluating the parties' proposed compromise, the Court need not reach its own

conclusions as to the expected value of litigating the claims through trial and appeal:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. … Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Fran.*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Grewe v. Cobalt Mortg., Inc.*, 2016 U.S. Dist. LEXIS 98224, *8-9 (W.D. Wa. Jul. 27, 2016) (citing *Officers for Justice*; *Rodriguez v. West Publ'g. ("W. Publ'g.)*, 563 F.3d 948, 965 (9th Cir. 2009) and recognizing that "the Ninth Circuit rejects the argument that a court must specifically weigh the merits of the class's claim against the settlement amount and quantify the expected value of fully litigating the matter.") (internal citations and alterations omitted).

**Factor 1:  Strength of the Plaintiff's Case**

Plaintiff's claim is supported by substantial evidence, but ultimately that claim depends upon persuading a jury to adopt their evidence over Defendants' competing evidence and arguments. The claims may depend on competing expert vehicle costing testimony.  *Perrin v. Papa John's Int'l., Inc.,* 2014 U.S. Dist. LEXIS 133974, at *12 (E.D. Mo. Sept. 24, 2014); *Villalpando v. Excel Direct Inc.,* 2016 Dist. LEXIS 53773, at *45 (N.D. Cal. Apr. 21, 2016). Courts recognize that "[w]hen the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."  *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266-7 (S.D.N.Y. 2012) (holding that such disputes "weigh in favor of approval.").  Indeed, "it is virtually impossible to predict with certainty which testimony would be credited….".  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985), aff'd., 798 F.2d 35 (2d Cir.

1986). Predicting how a jury would weigh the evidence here is particularly difficult because no known benchmarks exist for how a jury might decide or value the claims. Consequently, it is possible the class members would recover less than the damages they allege, or no damages at all. Plaintiff and his counsel necessarily, and properly, weighed the risk of proceeding with an assured recovery obtained through negotiation. In sum, the uncertainty of a jury trial warrants settlement approval.

### Factor 2: Risk, Expense, Complexity and Likely Duration of Further Litigation

"Class actions, in general, 'place an enormous burden of costs and expense upon [] parties.'" *Marshall v. NFL,* 787 F.3d 502, 512 (8th Cir. 2015). This case is no exception. Notably, Plaintiff's counsel has litigated similar claims for longer than six years prior to settlement. Ex. 2, ¶ 16. This litigation involved complex and novel issues. It would be expensive, both to the parties in terms of expert costs and time and to the Court in terms of deciding difficult and complex issues. By reaching a favorable settlement now, the parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed. In addition, reducing the class trial to a judgment and the eventual appeal would likely involve complex and time consuming issues. Making substantial monetary relief available now, without significant additional time, effort, or risk, should weigh heavily in favor of approval.

### Factor 3: Risk of Maintaining Class Action Status Through the Trial

Plaintiff recognizes some risk of denial of class certification. Although courts have certified nearly every class claim, *Edwards v. PJ Ops Idaho, LLC*, 2022 U.S. Dist. LEXIS 102861, at *8 (D. Idaho Jun. 7, 2022) (certifying Rule 23 class of pizza delivery drivers pursuing the same claim), petition for interlocutory appeal denied, Case No. 22-80056 (9th Cir. Aug. 19, 2022); *Branning v. Romeo's Pizza, Inc.*, 2022 U.S. Dist. LEXIS 59262, at *5-24 (N.D. Ohio Mar. 29, 2022); *Waters v. Pizza to You, LLC,* 2021 U.S. Dist. LEXIS 11743, at *7-27 (S.D. Ohio Jan.

22, 2021); *Brandenburg v. Cousin Vinny's Pizza, LLC,* 2018 U.S. Dist. LEXIS 189878, *2-18 (S.D. Ohio Nov. 6, 2018) (certifying same class claim under Rule 23); *McFarlin v. The Word Enterprises, Inc.,* 2017 U.S. Dist. LEXIS 164968, *3-13 (E.D. Mich. Oct. 5, 2017) (same); *Perrin v. Papa John's Int'l., Inc.,* 2013 U.S. Dist. LEXIS 181749, at *4-8 & 16-26 (E.D. Mo. Dec. 31, 2013) (same); *Bass v. PJCOMN Acq. Corp.,* 2011 U.S. Dist. LEXIS 58352, at *1-12 (D. Colo. June 1, 2011) (same); *Oregal v. PacPizza, LLC,* Case No. C12-01454 (Sup. Ct. of Contra Costa Cnty. May 8, 2014) (certifying similar claim under California class action rule) (Ex. 4); *Behaein v. Pizza Hut, Inc.,* Case No. BC541415 (Sup. Ct. of L.A. Cnty. Jul. 15, 2015) (Ex. 5) and a court refused to decertify a similar collective action claim following discovery, *Benton v. Deli Mgmt., Inc.,* 396 F. Supp. 3d 1261, 1284-86 (N.D. Ga. Aug. 8, 2019), one collective action was decertified, *Sullivan v. PJ United, Inc.,* 2018 U.S. Dist. LEXIS 143236 (N.D. Ala. Jun. 22, 2018).[1]  Plaintiff's counsel weighed that risk in negotiate the settlement amount.

### Factor 4:  Amount Offered in Settlement

The settlement provides meaningful monetary relief to the Plaintiff and numerous other delivery drivers and eliminates the inherent risks each side would bear if this complex litigation continued to resolution by a jury—an issue that, to the parties' knowledge, no jury has previously decided. The average recovery per delivery driver after attorney's fees, litigation costs, administrative costs and a service award will be $301.67.  Every class member will receive at least $25.00.  The certainty of that consideration provides far more value to low-wage-earning workers than the mere possibility of some amount of recovery at an unknown future date.

### Factor 5:  Extent of Discovery Completed and the Stage of the Proceedings

Although this claim settled early, counsel for the parties have litigated several similar claims

---

[1] Plaintiff's counsel consented to decertification in *Sullivan* based on individual arbitration agreements, which do not impact this litigation.

by pizza delivery drivers around the nation. Thus, they were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate damages. Prior to mediation, Plaintiff's counsel disclosed the results of his data accumulation and resulting spreadsheet damage calculations to defense counsel in an effort to eliminate differences in perception which may have impeded productive mediation. The parties were also able to laser-focus their settlement efforts. Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieve settlement without additional involvement by this Court. Such achievement warrants settlement approval.

### Factor 6:  Experience and View of Counsel

Class counsel has recommended this settlement without hesitation as it is in the best interests of the class members. That recommendation is based on Class counsel's substantial experience in class litigation and litigation of numerous similar claims. Therefore, this factor weighs strongly in favor of approval. *See Gribble v. Cool Transports Inc.,* 2008 U.S. Dist. LEXIS 115560, *26 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### Factor 7:  Presence of a Governmental Participant

This factor is non-applicable.

### Factor 8:  Reaction of the Class Members to the Proposed Settlement

After dissemination of the Court-approved notice, no class member has opted-out or objected to the settlement or any term of the settlement, which indicates that the class is generally pleased with the result. *See, e.g., Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) (finding that the absence of any objections weighed in favor of approving a class action settlement).

## II.    Plaintiff Yates Deserves a Service Award

The Settlement Agreement provides for a reasonable service award of $7,500.00 to the Named Plaintiff. Ex. 1, ¶ 2.1(A)(2). Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *W. Publ'g.*, 563 F.3d at 958-59; *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (service awards are appropriate in FLSA collective actions for same reasons as in Rule 23 class actions); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (service awards "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits").

Factors bearing on the decision of whether to grant a service award include, as relevant here, the actions taken by the named plaintiff to protect the interests of all other delivery drivers, the degree to which the delivery drivers have benefited from those actions, and the amount of time and effort the named plaintiff expended on the litigation. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, Named Plaintiff Yates substantially assisted counsel in achieving this settlement on behalf of all of Defendants' delivery drivers who have been employed during the recovery period. He first sought and obtained counsel with specific experience in minimum wage/vehicle reimbursement claims and initiated this action. He provided ongoing guidance to counsel. He endeavored to protect the interests of all of Defendants' delivery drivers and to obtain a substantial recovery on their behalf. He participated throughout the day-long mediation, and vigorously negotiated on behalf of all of Defendants' delivery drivers.  Ex. 2, ¶ 14. The other delivery drivers have substantially benefitted from the Named Plaintiff's efforts. In light of these efforts, a modest

service award is justified. The award also falls well within the range of other service awards typically approved by courts in this Circuit. *See, e.g.*, *Preston v. Porch.com*, 2022 U.S. Dist. LEXIS 144930, at *15-17 (S.D. Cal. Aug. 12, 2022) (approving $10,000.00 service award); *Garibay v. Wyndham Vacation Ownership, Inc.*, 2022 U.S. Dist. LEXIS 108652, at *8 (D. Nev. Jun. 17, 2022) (approving $10,000.00 service award); *Arredondo v. S.W. & Pac. Specialty Fin., Inc.*, 2022 U.S. Dist. LEXIS 101568, at *51 (E.D. Cal. Jun. 6, 2022); *May v. Wynn Las Vegas, LLC*, 2021 U.S. Dist. LEXIS 15898, at *10 (D. Nev. Jan. 25, 2021) (approving $15,000.00 incentive award to each of three named plaintiffs). Defendants do not oppose the service award.

## III.    Attorney's Fees and Costs Provided in the Settlement are Appropriate

The Settlement Agreement provides that Plaintiff's counsel will recover their fees from the Settlement Amount. Ex. 1, ¶ 2.1(A)(3). The FLSA and Oregon law entail fee and cost shifting provisions. 29 U.S.C. § 216(b); O.R.S. § 653.055(4). As various courts have observed, the theory behind attorneys' fee awards in representative actions is that "a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Mashburn v. Natl. Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) (cited with approval in *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In other words, fee awards to counsel further the remedial goals of the FLSA of and Oregon law of protecting workers from wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work"). The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Rodriguez v. Disner*, 688 F.3d 645,

653 (9th Cir. 2012).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Yue Zhou v. Wang's Restaurant*, 2007 U.S. Dist. LEXIS 60683, *4-5 (N.D. Cal. Aug. 8, 2007) ("Because a court supervised settlement of FLSA overtime claims is ultimately reduced to a judgment, under the FLSA an award of reasonable fees is mandatory."). The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Boeing Co.,* 444 U.S. at 478-79.

The settlement agreement here authorizes an award of fees *and costs* equal to of one-third (1/3) of the total settlement amount.  Other courts in this Circuit have approved the same percentage in exact same claims. *See, e.g.*, *Anderson v. Mountain View Pizza Co.*, Case No. 1:18-CV-00058-SPW-TJC (D. Mont. Apr. 29, 2020) (ECF Doc. # 118) (Ex. 6) (final approval order); *Anderson v. Mountain View Pizza Co.*, Case No. 1:18-CV-00058-SPW-TJC (D. Mont.) (ECF Doc. # 117) (Ex. 7) (motion for final settlement approval); *Abel v. Austyn Spencer Enterpr., LLC*, Case No. 18-CV-BLG-SPW (D. Mont. Mar. 11, 2020) (ECF Doc. # 45) (Ex. 8) (final approval order); *Abel v. Austyn Spencer Enterpr., LLC*, Case No. 18-CV-BLG-SPW (D. Mont.) (ECF Doc. # 41) (Ex. 9) (motion for final settlement approval); *Kirkwood v. Noble Food Grp., Inc.,* 2019 U.S. Dist. LEXIS 10146, *1-4 (W.D. Wa. Jan. 22, 2019); *Armes v. Hot Pizzas, LLC,* 2017 U.S. Dist. LEXIS 89920, *12-15 (D. Ariz. Jun. 9, 2017); *Larson v. Desert Sun Pizza, LLC,* Case No. 3:16-cv-08011-SRB (D. Ariz. Jan. 5, 2017) (Ex. 10).

The Ninth Circuit has recognized a loose benchmark of 25% in Rule 23 class actions involving passive plaintiffs and this District has recognized that "[i]n cases where recovery is uncertain, an award of one third of the common fund as attorneys' fees has been found to be appropriate."

*Demmings v. KKW Trucking, Inc.*, 2018 U.S. Dist. LEXIS 159749, at *39 (D. Or. Sept. 19, 2018)

(quoting *Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist. LEXIS 169057, at *46 (E.D. Cal. Nov.

27, 2012)); *Bell v. Consumer Cellular, Inc.*, 2017 U.S. Dist. LEXIS 95401, at *30 (D. Or. Jun. 21,

2017) (same).  However, courts in this Circuit recognize that most percentage fee awards exceed

the benchmark. *See, e.g.*, *Syed v. M-1, LLC*, 2017 U.S. Dist. LEXIS 118064, *15-18 (E.D. Cal.

July 27, 2017) (awarding fees of 1/3 of FLSA and Rule 23 settlement fund); *Bell v. Consumer

Cellular, Inc.,* 2017 U.S. Dist. LEXIS 95401, *33 (D. Or. Jun. 21, 2017) (recognizing that "Courts

have commonly approved awards of approximately 33% in [wage and hour] cases." (citing cases));

*Hopkins v. Stryker Sales Corp.,* 2013 U.S. Dist. LEXIS 16939, *8-10 (N.D. Cal. Feb. 6, 2013)

(awarding 1/3 fee and citing 6 cases awarding at least 1/3 fee); *Vasquez v. Coast Valley Roofing,

Inc.,* 266 F.R.D. 482, 492 (E.D. Cal. 2010) (33.3% fee awarded); *Knight v. Red Door Salons, Inc.*,

2009 U.S. Dist. LEXIS 111497, *17-18 (N.D. Cal. Feb. 2, 2009) (30% fee awarded). Indeed, in

"most common fund cases, the award exceeds that benchmark." *Vasquez*, 266 F.R.D. at 491

(internal quotation marks omitted).

To ensure a fee award is reasonable, this Circuit applies "the *Kerr* factors," to cross-check the

ultimate reasonableness of an attorneys' fee award: "(1) the time and labor required; (2) the novelty

and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the

customary fee; (6) whether the fee is fixed or contingent;[2] (7) time limitations imposed by the

client or the circumstances; (8) the amount involved and the results obtained; (9) the experience,

reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and

length of the professional relationship with the client; and (12) awards in similar cases." *In re*

---

[2] This factor is no longer applied.  *In re Bluetooth,* 654 F.3d at 942 n.7.

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942 n.7 (9th Cir. 2011) (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69 (9th Cir. 1975)).  All "*Kerr* factors" support final approval of the requested fee.

> ### *Kerr* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation and Ability of the Attorneys; and "Undesirability" of the Case.

Minimum wage lawsuits based on under-reimbursed expenses were extremely rare before Plaintiff's counsel's efforts on behalf of pizza delivery drivers. Previous cases prosecuted by Plaintiff's counsel provided significant and novel challenges, and ultimately yielded favorable decisions on pleading, certification, and methods of proof. *See, e.g., Wass v. NPC Int'l*, Inc., 688 F. Supp. 2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim."; "The present case does not involve a straightforward claim under the FLSA for unpaid amounts; rather, … [t]his case… demands a greater degree of specificity in pleading" than other FLSA cases.)).

Under the defendants' repeated threats of seeking sanctions in both the *NPC case* and *Smith v. Pizza Hut, Inc.*, Case No. 09-CV-01632 WDM-BNB (D. Colo.) if Plaintiff's counsel's theory proved incorrect, Plaintiff's counsel persisted because he believed in the merits of the claims. Courts ultimately endorsed his argument that a plaintiff need not prove his or her actual expenses, but can reasonably approximate those expenses. *See id*. These rulings paved the way for this settlement.

The U.S. District Court for the District of Maryland recognized:

> In some of these cases, [Claimants' Counsel] have represented pizza delivery drivers situated precisely as Claimants have been in the present case. In addition, the quality of the pleadings, motions, and briefs in the case fully evidences Class Counsels' skill, competence, and knowledge of the applicable law.

> …the fees are reasonable based on Class Counsels' skill. [Claimants' Counsel] are experienced and innovative wage and hour lawyers, which appears to be a niche practice. They have developed an expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.

*Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 368 (D. Md. Dec. 19, 2016); *see also, e.g.,*

*Jimenez v. Pizzerias, LLC*, 2017 U.S. Dist. LEXIS 129820, at *13-14 (S.D. Fla. Aug. 14, 2017)

("…Plaintiffs' Counsel in this matter are experienced and innovative wage and hour lawyers who

have developed expertise in challenging the sufficiency of compensation for pizza delivery drivers

under the FLSA.").

The fact that rulings from other courts – obtained by Plaintiff's counsel - may have helped

them obtain early resolution of this case does not minimize the risk in this case. *See Williams v.*

*Rohm & Haas Pension Plan*, 658 F.3d 629, 636-37 (7th Cir. 2011). As explained by the Seventh

Circuit in rejecting a similar argument, while these prior decisions bolstered Plaintiff's position,

no court of appeals has addressed these issues. Similarly, none of the other pizza delivery driver

cases have been submitted to a jury, thus leaving the ultimate resolution as a critical unknown.

Trial may be expert-intensive and thus costly. Plaintiff would need to provide documentary

evidence, lay testimony, and expensive expert testimony sufficient to establish liability and

damages for all class members. Further, regardless of the outcome at trial, post-judgment appeals

would be likely.

Additionally, Plaintiff's counsel possess extensive experience in all types of wage and hour

litigation. Ex. 2, ¶¶ 3-6. In light of the novelty and difficulty of the questions presented, the skill,

experience, reputation, and ability of Plaintiff's attorneys, and "undesirability" of the case, *Kerr*

factors (2), (3), (9) and (10) all strongly support Plaintiff's counsels' requested fee.

### *Kerr* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.

The Supreme Court recognizes that the result achieved is "the most critical factor" in

calculating a reasonable fee award is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *accord In re Bluetooth*, 654 F.3d at 942. As noted above, given the novelty and difficulty of cases involving minimum wage laws vis-à-vis reimbursable expenses, the delivery drivers' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the parties following contentious mediation is a very successful result for Plaintiff. The total settlement amount is the result of good faith, but contentious, arm's-length negotiation and represents an excellent result for the opt-ins in this case. Some opt-ins will receive substantial payments for their alleged unreimbursed vehicle expense. And while some opt-ins will receive less than others – based on relatively shorter employment – no opt-in will receive less than $25.00.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is less than Plaintiff's counsel's customary contingent fee in wage and hour litigation, which ranges between one-third and 40% of any recovery.

### *Kerr* Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.

Plaintiff's counsel's firms combined spent over 80 hours litigating this case with no assurance of any recovery at all. Ex. 2, ¶ 9; Ex. 3, Declaration of Matthew Haynie, ¶ 15. This includes time spent investigating the facts, preparing and filing pleadings, reviewing documents produced by the Named Plaintiff and by Defendants, analyzing Defendants' payroll, delivery, and reimbursement data, communicating with the Named Plaintiff, creating computerized damages models, researching and drafting a mediation statement, participating in the mediation, negotiating the terms of the settlement, drafting approval papers, and seeking the Court's approval of the settlement. Ex. 2, ¶¶ 8-9 ; Ex. 3, ¶¶ 15-17.

Plaintiff's counsel's lodestar is based on their standard hourly billing rates for work of this

type. Ex. 2, ¶¶ 9-10; Ex. 3, ¶¶ 14-16; *Compton v. N. Cent. Va. Rests., Inc.*, 2022 U.S. Dist. LEXIS 159070, at *14 & n.3 (W.D. Va. Sept. 2, 2022) (finding $500.00 rate for Mark Potashnick reasonable); *Nelson v. PJ Cheese, Inc.*, 2021 U.S. Dist. LEXIS 114633, at *5-6 (N.D. Ga. Jun. 17, 2021) (awarding Mark Potashnick fees at rate of $500.00 per hour); *Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-170-JCD (E.D.N.C. Aug. 28, 2020) (ECF No. 24) (Ex. 11) (finding Mr. Potashnick's $500.00 hourly rate to be "reasonable"); *Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-170-JCD (E.D.N.C. Aug. 20, 2020) (ECF No. 21) (Ex. 12) (fee and cost petition seeking $500.00 per hour for Mr. Potashnick); *Sagendorf,* 2021 U.S. Dist. LEXIS 213619, at *11 (approving Mr. Potashnick's fees based $500.00 per hour rate); *Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-00296-TCB (N.D. Ga. Jan. 28, 2020) (Ex. 13), at 8 (finding Mr. Potashnick's rate of $500.00 per hour to be "reasonable"); *Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-00296-TCB (N.D. Ga.) (ECF Doc. # 138) (Ex. 14), at 5, 12 & 13 (seeking fees for Mark Potashnick at rate of $500.00 per hour); *Burton v. DRAS Partners, LLC,* Case No. 19-cv-02949-SJC (N.D. Ill. Nov. 15, 2019) (ECF No. 35) (Ex. 15) (approving recovery of Mark Potashnick's fees at $500.00 per hour rate); *Rice v. PJ Cheese, Inc.,* AAA Case No. 01-20-0014-8150 (Bennett Apr. 13, 2022) (Ex. 16); *Hidalgo v. Quality Huts Midwest, LLC,* AAA Case No. 01-20-0010-0139 (Gilbert Oct. 27, 2021) (Ex. 17) (same); *Morse v. Parts Authority, LLC*, AAA Case No. 01-20-0003-8372 (Modica Jul. 23, 2021) (Ex. 18), at 4-6 (same); *Omelet v. Parts Authority, LLC*, AAA Case No. 01-20-0003-8239 (Pines May 3, 2021) (Ex. 19) (same); *Nelson v. PJ Cheese, Inc.,* AAA Case No. 01-19-0001-5314 (Kimmel Oct. 20, 2020) (Ex. 20) (same); *see also Pannell v. Parts Authority,* LLC, AAA Case No. 01-20-0009-6223 (Weinstock Oct. 25, 2021) (Ex. 21) (approving Mr. Potashnick's rate of $919.00 per hour); *Thompson v. Parts Authority, LLC,* Index No. 500141/2022 (Sup. Ct. of Kings Cnty., N.Y. Aug. 31, 2022) (Ex. 22) (finding Mr. Potashnick's $600.00 per hour rate

reasonable); *Thompson v. Parts Authority, LLC*, Index No. 500141/2022 (Sup. Ct. of Kings Cnty., N.Y. Aug. 31, 2022) (Ex. 23) (motion seeking fees at $600.00 per hour rate with 5.2 multiplier); *Ralph v. HAJ, Inc.,* 2021 U.S. Dist. LEXIS 59813, at *18 (S.D. Cal. Mar. 29, 2021) (approving fees at $575.00 hourly rate).

These rates, and much higher, have been approved as reasonable in numerous wage-and-hour cases, and courts in this Circuit frequently approve substantially higher hourly rates. *See, e.g.*, *Pittsley v. City of El Cajon,* 2019 U.S. Dist. LEXIS 141335, *19-20 (S.D. Cal. Aug. 19, 2019) (finding $650.00 per hour to be reasonable rate for wage and hour litigator with over 25 years experience); *Thomas v. Kellogg Co.*, Case No. 3:13-cv-05136-RBL (W.D. Wash.) (Dkt. 537, p. 25; noting rates as high as $800.00 per hour in wage-and-hour collective action); *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975, 984 (N.D. Cal. 2017) (approving hourly rates ranging from $300.00 to $900.00); *Velazquez v. Int'l Marine and Indus. Applicators, LLC*, 2018 U.S. Dist. LEXIS 21884, *25 (S.D. Cal. Feb. 9, 2018) (approving fee award; lodestar cross-check at hourly rate up to $800.00); *Bickley v. CenturyLink, Inc.*, 2016 WL 9046911, *5 (C.D. Cal. Nov. 29, 2016) (approving hourly rates of $650.00 to $750.00 in misclassification / overtime case). And, while the lodestar cross-check reflects a multiplier of 3.2, such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). Accordingly, courts routinely enhance lodestar amounts based on multipliers ranging from 2 to 4, or even higher. *See id.* (approving multiplier of 3.65).

This work naturally precluded counsel from pursuing other litigation opportunities. In addition, Plaintiff's counsel will be required to expend significant additional time administering the

settlement, which requires distributing individual recoveries and communicating with numerous class members.

**_Kerr_ Factor (12): Awards in Similar Cases.**

Plaintiff's counsel's fees equal to one-third (1/3) of the total recovery have been approved within this Circuit in the same claims against other pizza delivery companies. *Anderson* (Exs. 6-7); *Abel* (Exs. 8-9); *Kirkwood,* 2019 U.S. Dist. LEXIS 10146, at *1-4; *A-rmes,* 2017 U.S. Dist. LEXIS 89920, at *12-15; *Larson* (Ex. 10); *see, e.g.*, *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, at 1123-27 (C.D. Cal. 2008) (noting Silber and Goodrich's conclusion "that a 33% fee award is both reasonable, and in line with the general market for contingent fee work"); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. July 2, 2013) (33% of the class recovery is reasonable and approved based on the risk of litigation, fee awards in other wage-and-hour cases). Further, because the common fund is a relatively low fund, a one-third recovery is fair and commonplace for contingent fee work. *See Van Vranken v. A. Richfield Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) (funds under the $10 million mark are considered smaller, justifying a higher percentage attorney's fee). As such, Plaintiff's counsels' fee recovery in this case is more than reasonable.

Notably, the percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiff's counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. Third, use of the percentage

method decreases the burden imposed on the court by the "lodestar" method and assures that class members do not experience undue delay in receiving their share of the settlement.

The diligent work by Plaintiff's counsel in obtaining relief for all Defendants' delivery drivers should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

### Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and issue an Order that grants final approval to the Parties' settlement, and dismisses the claims with prejudice, with each Party to bear its own fees and costs except as previously agreed between them.

Respectfully submitted,

**WEINHAUS & POTASHNICK**

*/s/ Mark Potashnick*
Mark A. Potashnick (Mo. Bar # 41315)
(admitted *pro hac vice*)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

**CRISPIN MARTON CAMBRELENG**
Ashley A. Marton
Rebecca Cambreleng
1834 SW 58th Avenue, Suite 200
Portland, OR 97221
Phone: 503-293-5770
Email: ashley@employmentlaw-nw.com
Email: rebecca@employmentlaw-nw.com

ATTORNEYS FOR PLAINTIFF AND THE CLASS

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served on all counsel of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

_/ Mark Potashnick_